# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TRANSOURCE PENNSYLVANIA, LLC,** | : | |
| **Plaintiff** | : | |
| | : | **No.  1:21-CV-1101** |
| **v.** | : | |
| | : | **Judge Wilson** |
| **GLADYS BROWN DUTRIEUILLE, DAVID W. SWEET, JOHN F. COLEMAN, RALPH V. YANORA** *and* **PENNSYLVANIA PUBLIC UTILITY COMMISSION,** | : | **Electronically Filed Document** |
| | : | *Complaint Filed 06/22/21* |
| **Defendants** | : | |

## <u>DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT</u>

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................... i

TABLE OF AUTHORITIES ................................................... iii

INTRODUCTION ................................................................1

STATEMENT OF FACTS ....................................................5

    A.    The Parties And PJM ...........................................5

    B.    Project 9A........................................................6

    C.    The DEA...........................................................7

    D.    The Siting Applications ......................................8

    E.    The PUC Proceeding...........................................9

ARGUMENT.....................................................................10

I.    TRANSOURCE LACKS STANDING .....................................11

    A.    Transource Has Not Suffered An Injury In Fact Because Transource Only Alleges The Risk Of Speculative Future Economic Harm Based On The Occurrence Of Multiple Contingent Events.........................12

    B.    Transource's Purported Injury Is Not Redressable Because Transource Would Face The Same Prospective Economic Harm Even If It Obtained The Relief It Seeks ...........................................16

II.    TRANSOURCE'S CLAIMS FAIL...........................................18

    A.    Transource's Claims Are Barred By Issue Preclusion And Claim Preclusion ........................................................18

    B.    Transource's Preemption Claim Fails Because It Is In Direct Conflict With The Plain Language Of The Federal Power Act And With FERC's Interpretation Of Its Own Authority .....................................24

C.    Transource's Commerce Claim Should Be Dismissed Because The PUC's Denial Of Transource's Siting Applications Did Not Discriminate Against Out-Of-State Utilities.....................................27

CONCLUSION ...................................................................................30

# TABLE OF AUTHORITIES

Page(s)

## **Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................11

*Balent v. City of Wilkes-Barre*,
   669 A.2d 309 (Pa. 1995).................................................................22

*Chevron U.S.A. v. Nat. Res. Def. Council*,
   467 U.S. 837 (1984) ........................................................................26

*Chick Kam Choo v. Exxon Corp.*,
   486 U.S. 140 (1988) ........................................................................21

*City v. McKeesport v. Pa. Public Util. Comm'n,*
   442 A.2d 30 (Pa. Commw. Ct. 1982)...............................................20

*Nevada v. Nuclear Regul. Comm'n,*
   199 F. App'x 1 (D.C. Cir. 2006).......................................................16

*Crossroads Cogeneration Corp. v. Orange & Rockland Utils., Inc.*,
   159 F.3d 129 (3d Cir. 1998).............................................................18

*Farina v. Nokia, Inc.*,
   625 F.3d 97 (3d Cir. 2010) .........................................................24, 25

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009)..............................................................11

*Free v. Bland*,
   369 U.S. 663 (1962) ........................................................................24

*Gregory v. Chehi*,
   843 F.2d 111 (3d Cir. 1988)..............................................................22

*Heffner v. Murphy*,
    745 F.3d 56 (3d Cir. 2014) ........................................................................28, 29

*Karns v. Shanahan*,
    879 F3d 504 (3d Cir. 2018) ..............................................................................19

*Kentucky v. Graham*,
    473 U.S. 159 (1985) ............................................................................................1

*Kentucky W. Va. Gas Co. v. Pa. Pub. Util. Comm'n*,
    721 F. Supp. 710 (M.D. Pa. 1989) ........................................................19, 23, 24

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .................................................................... 12, 13, 14, 16

*Metro. Edison Co. v. Pa. Pub. Util. Comm'n*,
    767 F.3d 335 (3d Cir. 2014)......................................................................21, 22

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
    549 F.2d 884 (3d Cir. 1977)...............................................................................10

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
    545 U.S. 967 (2005) ..........................................................................................26

*Or. Waste Sys., Inc. v. Dep't of Envt'l Quality*,
    511 U.S. 93 (1994) .............................................................................................28

*Peloro v. U.S.*,
    488 F.3d 163 (3d Cir. 2007)...............................................................................20

*R & J Holding Co. v. Redevelopment Auth.*,
    670 F.3d 420. (3d Cir. 2011)..............................................................................23

*Reilly v. Ceridian Corp.*,
    664 F.3d 38 (3d Cir. 2011) .................................................................................14

*Respond Power LLC v. Pa. Pub. Util. Comm'n*,
    2021 WL 446097 (Pa. Commw. Ct. Feb. 9, 2021).............................................19

*Storino v. Borough of Point Pleasant Beach*,
   322 F.3d 293 (3d Cir. 2003) ................................................................ 12, 14, 16

*Tafflin v. Levitt*,
   493 U.S. 455 (1990) ........................................................................ 21

*United Student Aid Funds, Inc. v. Espinosa*,
   559 U.S. 260 (2010) ........................................................................ 21

*Vega v. Dep't of Transp.*,
   2020 WL 4570061 (M.D. Pa. Aug. 7, 2020) .................................. 23, 24

*Warth v. Seldin*,
   422 U.S. 490 (1975) ........................................................................ 16

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) ........................................................................ 14

*Willis v. U.S.*,
   2015 WL 1333335 (M.D. Pa. Mar. 19, 2015) .................................. 10

**Statutes**

16 U.S.C. § 824(a) ................................................................ 2, 21, 22, 25

U.S. Const. Art. I, § 8, cl. 3 ................................................................ 27

U.S. Const. art. VI, cl. 2 ........................................................................ 24

**Rules**

Fed. R. Civ. P. 12(b)(1) ........................................................................ 10

Fed. R. Civ. P. 12(b)(6) ........................................................................ 11

**Regulations**

52 Pa. Code § 57.71 ................................................................................ 2, 8

52 Pa. Code § 57.76 ................................................ 2,3, 8-10, 17, 22, 25, 26, 27, 29

*Transmission Planning and Cost Allocation by Transmission Owning and Operating Public* Utilities, Federal Energy Regulatory Commission Order No. 1000, 76 Fed. Reg. 49,842 (Aug. 11, 2011) ..........................................................22

*Transmission Planning and Cost Allocation by Transmission Owning and Operating Public Utilities*, Federal Energy Regulatory Commission Order No. 1000-A, 77 Fed. Reg 32,184 (May 31, 2012)........................................ 2, 22, 26, 29

Defendants Gladys Brown Dutrieuille, Chairman, Pennsylvania Public Utility Commission, David W. Sweet, Vice Chairman, Pennsylvania Public Utility Commission, John F. Coleman, Jr. and Ralph V. Yanora, Commissioners, Pennsylvania Public Utility Commission, all in their official capacities, and the Pennsylvania Public Utility Commission (collectively, the "PUC"),[1] hereby submit this brief in support of their motion to dismiss the Complaint in this action filed by Plaintiff Transource Pennsylvania, LLC ("Transource" or "Transource PA").

## INTRODUCTION

This case arises from Transource's failure to obtain the necessary state law approvals for a utility construction project that were a condition precedent under a third-party Designated Entity Agreement ("DEA") between Transource and PJM Interconnection, L.L.C. ("PJM"). Transource is a subsidiary of a consolidated joint venture controlled by American Electric Power Company, Inc. ("AEP"), a publicly traded utility holding company with a market capitalization of more than $40 billion. *See* AEP, Annual Report (Form 10-k) (Feb. 25, 2021) at 1, 393 (Exhibit A). PJM is a "federally-regulated regional transmission organization" and numerous AEP subsidiaries serve as members of PJM. Doc. 1 ¶ 1; *see* Ex. A at 1-

_____

[1]    While the PUC commissioners are named as defendants in their official capacities together with the PUC, "[o]fficial-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (internal quotation omitted).

3.  The DEA between Transource and PJM contemplated the "construction of two new electric transmission lines and associated facilities" in Pennsylvania by Transource (the "IEC Projects") to alleviate "congestion" in the "regional grid" that had been "identified" by PJM.  Doc. 1 ¶¶ 2- 3.

However, under Pennsylvania law, Transource could not construct the transmission lines until it had submitted "siting" applications to the PUC and the PUC approved the applications.  *See* 52 Pa. Code § 57.71.  "Siting . . . is a complex, technical process that involves balancing disturbance to human, cultural and natural resources with a community's need for reliable electricity." https://www.aeptransmission.com/property-owners/line-siting.php (Exhibit B).  In addition, Pennsylvania law provides that the PUC may grant a siting application for a transmission line only if the PUC determines, among other things, "[t]hat there is a need for it."  52 Pa. Code § 57.76(a)(1) (emphasis added).  The requirements of Pennsylvania law are consistent with the Federal Power Act, which expressly "preserves state authority over siting and construction issues related to [regional transmission projects]." Doc. 1 ¶ 42; *see* 16 U.S.C. § 824(a). The Federal Energy Regulatory Commission ("FERC") has also made clear that "there is nothing" in its authority or that of PJM "that preempts state authority regarding transmission planning, including authority over the siting, permitting, and construction of transmission facilities."  *Transmission Planning and Cost*

*Allocation by Transmission Owning and Operating Public Utilities*, Federal Energy Regulatory Commission Order No. 1000-A, 77 Fed. Reg 32,184, 32,215 (May 31, 2012). Thus, federal law "<u>does not</u> require that such facilities be built, give any entity permission to build a facility, or <u>relieve a developer from obtaining any necessary state regulatory approvals</u>." *Id*. at 32,216 (emphasis added). Under the terms of the DEA, Transource was "solely responsible" for "obtaining" all "siting" and "other regulatory approvals" from the PUC. Doc. 21-7 at 14 (§ 4.5).

Transource filed the siting applications with the PUC on December 27, 2017 and the applications were vigorously contested by multiple stakeholders in a lengthy administrative proceeding before a PUC Administrative Law Judge ("ALJ"). *See* Doc. 1-2 at 9-22. "After extensive testimony, discovery, and six days of evidentiary hearings," the ALJ issued a report recommending that the PUC deny the siting applications. Doc. 1 ¶ 46. Transource filed exceptions to the full PUC and the PUC issued an Order on May 24, 2021 denying Transource's siting applications (the "May 24 Decision"). *See id.* at ¶ 49; *see* Doc. 1-2. The May 24 Decision was based on the PUC's determination that Transource had failed to show that there was a need for the IEC Projects under 52 Pa. Code § 57.76(a)(1). *See* Doc. 1-2 at 67-68. Transource has since appealed the May 24 Decision to the Commonwealth Court of Pennsylvania, where it is currently pending, and has now commenced this federal action as well. *See* Doc. 21-1 at 10.

In this federal case Transource is attempting to dramatically expand the scope and reach of federal energy law in advance of a decision on its appeal in the Commonwealth Court by engaging in a wholesale rewrite of the Federal Power Act and FERC's regulatory guidance. In particular, Transource asserts that PJM's identification of a need for the IEC projects is binding under federal law and preempts any contrary determination made by the PUC under Pennsylvania law. Transource also asserts that the May 24 Decision amounts to unlawful discrimination in violation of the dormant Commerce Clause. Transource is wrong on both counts and the Complaint should be dismissed for the following reasons.

***First***, Transource lacks standing to bring this action. Transource has failed to show an injury in fact because it only alleges the possibility of future prospective economic harm and its allegations are predicated on the occurrence of multiple contingent events that have not happened yet and may not happen at all. Transource has also failed to show that its purported injuries are redressable because Transource would face the exact same prospective economic harm even if the Court were to grant Transource the relief it seeks.

***Second***, Transource's preemption claim is barred by issue preclusion because Transource has fully litigated this claim in the PUC administrative proceeding and preclusion law applies to PUC proceedings under binding Third Circuit and Pennsylvania state court precedent. In addition, Transource's

Commerce Clause claim is barred by claim preclusion because Transource could have asserted this claim in the PUC proceeding but did not.

***Third***, Transource's preemption claim fails substantively as a matter of law because it is in direct conflict with the plain language of the Federal Power Act and FERC's interpretation of its own authority.

***Fourth***, Transource's Commerce Clause claim fails because there is no allegation in this case that the PUC has discriminated against Transource as an out-of-state utility in favor of other instate Pennsylvania utilities.

For these reasons, as described further below, the PUC's motion should be granted and the Complaint should be dismissed.

## STATEMENT OF FACTS

### A.      The Parties And PJM

AEP is a publicly traded utility holding company with a market capitalization of more than $40 billion. *See* Ex. A at 1. Transource Energy, LLC ("Transource Energy") is a joint venture between an AEP holding company and Evergy, Inc. that was "formed to pursue competitive transmission projects." *Id*. at 27. "AEP has the power to direct the most significant activities of [Transource Energy]" and AEP is therefore "required to consolidate Transource Energy." *Id*. Transource PA "is a wholly-owned direct subsidiary of Transource Energy" that "was formed to construct, own, operate, and maintain electric transmission

facilities and equipment within the Commonwealth of Pennsylvania." Doc. 1 ¶¶ 7-8.

PJM "is a regional transmission organization (RTO) that coordinates the movement of wholesale electricity in all or parts of Delaware, Illinois, Indiana, Kentucky, Maryland, Michigan, New Jersey, North Carolina, Ohio, Pennsylvania, Tennessee, Virginia, West Virginia and the District of Columbia." Doc. 20-5 at 2. While PJM identifies publicly as "a neutral, independent party" (*id.*), numerous AEP public utility subsidiaries serve as members of PJM. *See* Ex. A at 1-3.

The PUC is the "Commonwealth of Pennsylvania government agency with jurisdiction over electric transmission line siting and construction certificate applications." Doc. 1 ¶ 9.

### B.    Project 9A

In or around 2014, PJM "found that transmission lines along the Pennsylvania-Maryland border . . . suffer from 'congestion.' Congestion means that electricity cannot flow freely because of insufficient transmission infrastructure. PJM found that this congestion results in higher cost power for residents in portions of Maryland, Virginia, Washington, D.C." Doc. 21-6 ¶ 2. "On October 30, 2014, PJM solicited proposals—under its competitive framework established pursuant to FERC Order 1000—for a project to alleviate" this "congestion" "as part of its annual regional transmission expansion planning

6

("RTEP") process." *Id*. at ¶ 3. Transource Energy "submitted Project 9A" to PJM, "a major component of which is the IEC Project[s]" in Pennsylvania. *Id*. PJM "approved Project 9A" on August 2, 2016. *Id*. at ¶ 4.

### C.  The DEA

Transource and PJM entered into the DEA on November 2, 2016. *See id*. at ¶ 7. "The DEA assigns responsibility for construction, ownership, maintenance, and operation of the Pennsylvania Portion of the IEC Project[s] to Transource." *Id*. In addition, the DEA states expressly that Transource "shall be solely responsible for . . . obtaining all necessary permits, siting, and other regulatory approvals." Doc. 21-7 at 14 (§ 4.5). The DEA also lists a number of conditions precedent for which Transource was responsible and the dates by which the conditions were to be completed. *See id*. at 29-30. The DEA refers to these dates as "milestone dates." *Id*. at 29. One such condition was the requirement that, "[o]n or before December 1, 2019, [Transource] must demonstrate that all required federal, state, county and local site permits have been acquired." *Id*. While Transource alleges that its "failure to meet" this and other "milestone dates may be deemed a breach of the DEA," no such breach has occurred despite the significant lapse of this milestone date. Doc. 21-6 ¶ 9. On November 18, 2020 – nearly one year after the expiration of the December 1, 2019 milestone date, and before Transource had obtained the necessary regulatory approvals – "PJM and Transource Energy agreed

to extend the deadline" to September 30, 2021. *Id*. at ¶ 11. PJM also has complete discretion to extend the milestone date again. *See id*. at ¶ 13 (alleging only that "PJM is under no obligation to extend the DEA's milestone deadlines").

### D.    The Siting Applications

Under Pennsylvania law, a public utility like Transource must submit a siting application to the PUC and the PUC must approve the application before construction of an electric transmission line can begin. *See* 52 Pa. Code § 57.71. In addition, Pennsylvania law requires that a public utility satisfy the following conditions by a preponderance of the evidence in order to obtain approval of a siting application:

> (1)    That there is a need for it.
>
> (2)    That it will not create an unreasonable risk of danger to the health and safety of the public.
>
> (3)    That it is in compliance with applicable statutes and regulations providing for the protection of the natural resources of this Commonwealth.
>
> (4)    That it will have minimum adverse environmental impact, considering the electric power needs of the public, the state of available technology and the available alternatives.

52 Pa. Code § 57.76.

Transource submitted siting applications to the PUC for the IEC Projects on December 27, 2017. *See* Doc. 1-2 at 9.

### E.    The PUC Proceeding

The applications were considered by the ALJ and opposed by numerous stakeholders, including the Pennsylvania Office of Consumer Advocate ("OCA"), Franklin County, the York Planning Commission, as well as various landowners, property owners, business owners and homeowners who would be affected by the IEC Projects.    *See* Doc. 1-2 at 81, 111, 122.    "[A]fter extensive testimony, discovery, and six days of evidentiary hearings," and more than three years after the applications had been submitted, the ALJ issued a Recommended Decision on December 22, 2020.    *Id.* at ¶ 46.    The ALJ concluded that the siting applications should be denied because Transource had not met its burden of proving that the IEC Projects (i) were "needed" as required under § 57.76(a)(1); (ii) were "in compliance with applicable statutes and regulations providing for the protection of the natural resources of the Commonwealth" as required under § 57.76(a)(3); and (iii) "would have a minimum adverse environmental impact" as required under § 57.76(a)(4).    Doc. 1-3 at 134.

"In response, Transource brought its exceptions to the Recommended Decision before the full PAPUC, explaining in detail" its contention that "the Recommended Decision misinterpreted FERC's Order No. 1000, the meaning and weight of the PJM regional transmission planning process and decision on Project 9A, and the remaining role left for the PAPUC under state law in this context."

Doc. 1 ¶ 49.  After considering Transource's exceptions and the reply exceptions of the OCA, Franklin County and a separate county organization, the PUC issued the May 24 Decision denying Transource's siting applications.  *See* Doc. 1-2.  The May 24 Decision was based on the PUC's determination that Transource had not shown a "need" for the IEC Projects under § 57.76(a)(1).  *See id*. at 56-68.  Transource has appealed the May 24 Decision to the Commonwealth Court and is pursuing this action "contemporaneously" with its appeal.  Doc. 21-1 at 10.

## ARGUMENT

The Complaint should be dismissed for "lack of subject matter jurisdiction" because Transource lacks standing.  Fed. R. Civ. P. 12(b)(1).  In a factual challenge under Rule 12(b)(1) for lack of standing, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist."  *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  Thus, "if the defendant presents evidence contesting any allegations in the pleadings, . . . the plaintiff must present facts by affidavit or deposition or in an evidentiary hearing" sufficient to establish standing.  *Willis v. U.S.*, 2015 WL 1333335, at *2 (M.D. Pa. Mar. 19, 2015), *aff'd sub nom Willis v. USP Canaan*, 635 F. App'x 5 (3d Cir. 2015).  Here, Transource has failed to provide any

evidence that confers standing and the Complaint should be dismissed for this reason alone.

The Complaint should also be dismissed "for failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), "[t]he District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). "[A] District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id*. at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Transource fails to satisfy this pleading standard and the Complaint should be dismissed for this separate reason as well.

## I.    TRANSOURCE LACKS STANDING

As explained by the Supreme Court:

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action

> of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations and quotation marks omitted) (alterations removed). As described below, Transource fails to satisfy the first and third elements of standing.

### A.    Transource Has Not Suffered An Injury In Fact Because Transource Only Alleges The Risk Of Speculative Future Economic Harm Based On The Occurrence Of Multiple Contingent Events

Transource alleges that it has suffered an injury because it may eventually lose the $86 million it invested in the IEC Projects and the return on equity that it "expected" from the projects. Doc. 21-6 ¶ 14. Transource also alleges that "customers primarily in Maryland, Virginia, and the District [of Columbia]" may have to pay more for electricity. *Id*. None of these allegations are sufficient to establish an injury in fact to Transource.

*First*, the purported injuries alleged by Transource are predicated on future contingent events that have not happened yet and may not happen at all. Stated differently, "one cannot describe how [Transource] will be injured without beginning the explanation with the word 'if.'" *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 297-98 (3d Cir. 2003). In particular, Transource will face a risk of financial loss only if each of the following events occur:

    (i)     The failure by Transource to obtain PUC approval of its siting applications is "deemed a breach of the DEA" (Doc. 21-6 ¶ 9);

    (ii)    Transource's breach of the DEA results in "default under, and termination of, the DEA" (*Id.*);

    (iii)   the termination of the DEA leads to PJM's abandonment of Project 9A (*see id.* at ¶ 13); and

    (iv)    PJM's abandonment of Project 9A leads to future prospective economic losses to Transource. *See id.* at ¶ 14.

All of these events are entirely contingent and hypothetical. There will be no breach of the DEA if Transource prevails in its appeal pending in the Commonwealth Court or if PJM "extend[s] the DEA's milestone deadlines" as it has already done in the past. *Id.* at ¶ 13. There will be no termination of the DEA or abandonment of Project 9A unless or until PJM – a non-party to this action – makes the "independent" decision to do both of these things. Doc. 20-5 at 2; *Lujan*, 504 U.S. at 560 (there is no standing when an injury is "the result of the independent action of some third party not before the court") (quotation omitted) (alterations removed).

Moreover, even if all of these other events occur, Transource will face prospective economic losses from the abandonment of Project 9A only if the project would have been profitable for Transource, which is unknowable at this time. *See id.* at ¶ 14 (the "return on equity" would only be "<u>expected over the several decades</u> the project will serve the public <u>if constructed</u>") (emphasis added).

The utility industry is fraught with risk because of its capital intensive nature and AEP has disclosed numerous factors that may cause its various utility projects to become unprofitable. *See* Ex. A at 34-46. Thus, even if Transource "expects" Project 9A to be profitable at this time, some or all of the risks disclosed by AEP may cause the project to become unprofitable in the future.

In sum, multiple contingent events that have not yet occurred and may not occur at all would have to occur before Transource will even face the prospect of financial harm at all. Transource's "[a]llegations of 'possible future injury' are not sufficient to satisfy" the injury in fact requirement of standing. *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)); *see Storino*, 322 F.3d at 297-98 (holding that plaintiffs lacked standing when "[t]he prospective [economic] damages, described by the [plaintiffs] as certain, are, in reality, conjectural").

**Second**, Transource also lacks standing because the timing of the future prospective economic losses alleged by Transource is indeterminate. Standing requires that "[a] threatened injury must be 'certainly impending'" (*Whitmore*, 495 U.S. at 158) and "proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all." *Lujan*, 504 U.S. at 564 n. 2. Here, Transource alleges that it may lose its $86 million investment in the IEC Projects if all of the contingent events described

14

above occur. *See* Doc. 21-6 ¶ 14. But Transource can pursue the recovery of "those costs through a regulatory proceeding at FERC. . . .". Doc. 21-1 at 5. Moreover, FERC has already granted Transource's request "for recovery of 100 percent of [the] prudently-incurred costs" that Transource invested in the project if it is abandoned due to "factors beyond Transource's control." Exhibit C ¶ 50. Therefore, any actual loss will not be known until after the FERC proceeding is completed.

As described above, Transource also alleges that it may lose its expected return on equity from the IEC Projects. *See* Doc. 21-6 ¶ 14. But Transoruce has also received a commitment from FERC that it will obtain a 9.9 percent return on the prudently incurred costs that it has invested in Project 9A. *See* Exhibit D ¶ 25. Moreover, Transource would not be in a position to realize any additional return on equity until years from now because the project is still in its incipient stages and has not even gotten off of the ground. Thus, to the extent an expected return from the project is even reasonably estimable at this time, any actual return would not occur until far into the future, after all necessary state law approvals are obtained, the transmission lines and supporting infrastructure are constructed, rates are set and electricity is transmitted and paid for. The impairment of a hypothetical future return on equity "that <u>might</u> take place years from now is not 'actual or

imminent.'"  *Nevada v. Nuclear Regul. Comm'n*, 199 F. App'x 1, 2 (D.C. Cir. 2006) (emphasis in original); *see Storino supra*.

**Third**, the purported higher prices that out-of-state customers may have to pay for electricity are not an injury to Transource.  None of these customers are parties to this action and Transource only brings claims on behalf of itself, not on behalf of a class.  To have standing Transource "must assert [its] own legal rights and interests, and cannot rest [its] claim to relief on the legal rights or interests of third parties."  *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

In sum, the allegations made by Transource show only that it faces the potential risk of speculative economic losses at an unknown date in the future if multiple contingent events occur.  These speculative allegations are insufficient to show that Transource has suffered an injury in fact.  Transource therefore fails to satisfy the first element of standing.

**B.    Transource's Purported Injury Is Not Redressable Because Transource Would Face The Same Prospective Economic Harm Even If It Obtained The Relief It Seeks**

Transource also fails to satisfy the third element of standing.  The third element requires Transource to show that it is "likely, as opposed to merely speculative, that [its] injury will be redressed by a favorable decision."  *Lujan*, 504 U.S. at 561.  Transource does not satisfy this element because Transource would

face the exact same prospective economic harm it does now even if the Court were to provide Transource with the relief it is seeking in this case.

Under Pennsylvania law the PUC can only grant Transource's siting applications for the IEC Projects if Transource establishes by a preponderance of the evidence that each of the following four conditions are satisfied:

> (1)  That there is a need for it.
>
> (2)  That it will not create an unreasonable risk of danger to the health and safety of the public.
>
> (3)  That it is in compliance with applicable statutes and regulations providing for the protection of the natural resources of this Commonwealth.
>
> (4)  That it will have minimum adverse environmental impact, considering the electric power needs of the public, the state of available technology and the available alternatives.

52 Pa. Code § 57.76.  As described above, the PUC denied Transource's siting applications based on its determination that Transource failed to establish a need for the IEC Projects under § 57.76(a)(1).  *See* Doc. 1-2 at 67-68.  The PUC did not address any of the other requirements of § 57.76 because the PUC concluded that its determination regarding need was dispositive and "rendered moot" any consideration of the other requirements.  *Id.* at 68-70.

In this case Transource seeks relief in the form of "a declaratory judgment that the PAPUC's determination that the IEC Projects are not needed" under §

17

57.76(a)(1) violates the United States Constitution. Doc. 1 at 40. However, even if the Court were to provide this relief, the PUC could still deny Transource's siting applications on any of the other grounds enumerated in subsections (2), (3) or (4) that the PUC has not yet considered but is required to consider before granting Transource's siting applications. Transource has offered no evidence showing that a denial of Transource's applications on any of these other grounds is unlikely, especially since the ALJ recommended that Transource's applications be denied under (3) and (4) as well. *See* Doc. 1-3 at 134.

Accordingly, Transource has also failed to satisfy the third element of standing because it has failed to show that the injury it alleges would be redressed by the relief it seeks. Transource lacks standing for this separate reason as well.

## II.    TRANSOURCE'S CLAIMS FAIL

Even if Transource had standing to bring this case (it does not), the Complaint should also be dismissed because Transource's claims fail under Rule 12(b)(6). In particular, Transource's claims are barred by issue preclusion and claim preclusion and also fail substantively as a matter of law.

### A.    Transource's Claims Are Barred By Issue Preclusion And Claim Preclusion

The "decisions of [a] state agenc[y] responsible for utility regulation" like the PUC "should be given preclusive effect to the extent afforded under [Pennsylvania] law." *Crossroads Cogeneration Corp. v. Orange & Rockland*

*Utils., Inc.*, 159 F.3d 129, 135 (3d Cir. 1998). Under Pennsylvania law, "decisions of Commonwealth administrative agencies, such as the [PUC], are entitled to res judicata and collateral estoppel effect where the agency is acting in a judicial capacity and resolves disputed issues of fact properly before it, which parties had an opportunity to litigate." *Respond Power LLC v. Pa. Pub. Util. Comm'n*, 2021 WL 446097, at *8 (Pa. Commw. Ct. Feb. 9, 2021). That is clearly the case here since Transource "was represented by counsel, testimony was taken and factual determinations within the province of the PUC's jurisdiction were made" during the PUC administrative proceeding. *Kentucky W. Va. Gas Co. v. Pa. Pub. Util. Comm'n*, 721 F. Supp. 710, 715 (M.D. Pa. 1989)¸ *aff'd*, 899 F.2d 1217 (3d Cir. 1990). Therefore, preclusion law applies to the May 24 Decision.

      1.    <u>Transource's preemption claim is barred by the doctrine of issue preclusion.</u>

      a.    All elements of issue preclusion are satisfied.

Transource's preemption claim is barred by the doctrine of issue preclusion. Issue preclusion "prohibits relitigation of an issue that has been fully and fairly litigated previously." *Karns v. Shanahan*, 879 F3d 504, 515 n.3 (3d Cir. 2018). Issue preclusion applies when "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential

to the prior judgment." *Peloro v. U.S.,* 488 F.3d 163, 174 (3d Cir. 2007) (quotation omitted).  All elements are present here.

Transource has already litigated the same preemption issue in the PUC administrative proceeding that it is attempting to raise here.  In particular, Transource argued before the PUC that any independent determination of need by the PUC was "preempted by the federal power pursuant to which PJM conducts its selection process for regional transmission planning purposes, including Project 9A."  Doc. 1-2 at 60; *see* Exhibit E at 13-15.  The issue of preemption was actually litigated because the PUC considered and "expressly reject[ed]" Transource's arguments.  Doc. 1-2 at 60.  In addition, the PUC's May 24 Decision is a final and valid judgment and the issue of preemption was central to the judgment because the PUC could not have made the determination upon which the judgment was based without rejecting Transource's preemption argument.  *See City v. McKeesport v. Pa. Public Util. Comm'n,* 442 A.2d 30, 31 (Pa. Commw. Ct. 1982) (holding that preclusion applies "in full force" to decisions of the PUC).

For these reasons, Transource's attempt to relitigate the issue of preemption in this forum is barred by the doctrine of issue preclusion and Transource's preemption claim should be dismissed.

b.    The PUC was not divested of jurisdiction to decide the preemption issue.

Transource may argue that the PUC administrative proceeding was void for lack of jurisdiction because federal law preempted the PUC from rendering a decision at all.  But this argument is flawed.  "Federal courts considering [whether] a judgment is void because of a jurisdictional defect generally have reserved relief only for the exceptional case in which the court that rendered judgment lacked even an arguable basis for jurisdiction." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010).  "Showing that a state tribunal lacked even an arguable basis for jurisdiction over a federal question is difficult because, under the principles of federalism, there is a 'deeply rooted presumption in favor of concurrent state court jurisdiction.'"  *Metro. Edison Co. v. Pa. Pub. Util. Comm'n*, 767 F.3d 335, 359 (3d Cir. 2014) (quoting *Tafflin v. Levitt*, 493 U.S. 455, 459 (1990)).  In addition, "binding precedent instructs that, 'when a state proceeding presents a federal issue, <u>even a pre-emption issue</u>, the proper course is to seek resolution of that issue by the state court.'"  *Id*. at 364 (quoting *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 149-50 (1988)) (emphasis added).  The circumstances of this case are not at all exceptional.

To the contrary, the language of the Federal Power Act expressly limits the authority of FERC and PJM to "those matters which are not subject to regulation by the States."  16 U.S.C. § 824(a).  In addition, FERC has been explicit that it

"decline[s] to impose obligations to build or mandatory processes to obtain commitments to construct transmission facilities in the regional transmission plan. . . ." *Transmission Planning and Cost Allocation by Transmission Owning and Operating Public Utilities*, Federal Energy Regulatory Commission Order No. 1000, 76 Fed. Reg. 49,842, 49,870 (Aug. 11, 2011). Thus, there is nothing in FERC's authority or that of PJM "that preempts state authority regarding transmission planning, including authority over the siting, permitting, and construction of transmission facilities." Order No. 1000-A, 77 Fed. Reg at 32215 (emphasis added).

Given the broad and express reservation of authority to the states under § 824(a) together with FERC's interpretation of the limits of its own authority, there is absolutely no merit to any assertion by Transource that the May 24 Decision is void for lack of jurisdiction. *See Metro. Edison*, 767 F.3d at 364 ("As the PUC and the Commonwealth Court were not divested of authority to act altogether, the result of the state proceeding is not void on that ground.").

  2.  Transource's Commerce Clause claim is barred by the doctrine of claim preclusion.

Transource's commerce clause claim is barred by the doctrine of claim preclusion and should also be dismissed. "Claim preclusion prevents a party from prevailing on issues he might have but did not assert in the first action." *Gregory v. Chehi*, 843 F.2d 111, 116 (3d Cir. 1988); *see Balent v. City of Wilkes-Barre*, 669

A.2d 309, 313 (Pa. 1995) (claim preclusion "applies not only to claims actually litigated, but also to claims which could have been litigated during the first proceedings").  "For claim preclusion to apply, Pennsylvania requires that the two actions share the following four conditions: (1) the thing sued upon or for; (2) the cause of action; (3) the persons and parties to the action; and (4) the capacity of the parties to sue or be sued."  *R & J Holding Co. v. Redevelopment Auth.*, 670 F.3d 420, 427. (3d Cir. 2011).  All conditions are satisfied here.

The thing sued upon is the same in both proceedings because Transource initiated the PUC administrative proceeding to seek approval of its siting applications and Transource has initiated this federal action to challenge the PUC's denial of these same siting applications.  *See Kentucky W. Va. Gas*, 721 F. Supp. at 715 (holding that the first criteria was satisfied when the federal action "shares an identity with the thing sued on in the [PUC] administrative proceedings").   The cause of action is the same in both proceedings because "[t]he events giving rise to the various legal claims are the same" – i.e., the consideration of Transource's siting applications and the decision to deny those applications.  *Vega v. Dep't of Transp.*, 2020 WL 4570061, at *3 (M.D. Pa. Aug. 7, 2020) (Wilson, J.). "Moreover, the witnesses, documents, and facts alleged would all be the same if this case proceeded."  *Id*.  Indeed, the Statement of Undisputed Material Facts that Transource has submitted in connection with its motion for summary judgment

consists entirely of evidence that "has already been heard in the prior state [administrative] proceeding." *Id.*; *see* Doc. 20-3.  In addition, since Transource was a party in the PUC administrative proceeding and is now bringing suit against the PUC as a party in this proceeding, "[t]he third and fourth criteria" of claim preclusion "are also satisfied here." *Kentucky W. Va. Gas*, 721 F. Supp. at 715 n.11.

Having commenced a state administrative proceeding to approve its siting applications "and having omitted a claim which could have been argued, but which was not, [Transource] would now be foreclosed by a state court from litigating the issue.  We must do likewise." *Id*. at 715.  Transource's commerce claim is barred by the doctrine of claim preclusion and should be dismissed.

### B. Transource's Preemption Claim Fails Because It Is In Direct Conflict With The Plain Language Of The Federal Power Act And With FERC's Interpretation Of Its Own Authority

Transource's preemption claim should also be dismissed because it fails substantively as a matter of law.  As explained by the Third Circuit:

> The Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2, invalidates state law that 'interferes with or is contrary to federal law.'" *Free v. Bland*, 369 U.S. 663, 666 (1962)).  Federal law can preempt state law in three ways: (1) express preemption, (2) field preemption, and (3) conflict preemption.

*Farina v. Nokia, Inc.*, 625 F.3d 97, 115 (3d Cir. 2010).  Here, Transource raises conflict preemption.  Conflict preemption "exists (1) where it is impossible for a

private party to comply with both state and federal requirements, or (2) where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 122 (quotation omitted). Transource's preemption claim is based on its allegation that PJM used a "federally approved methodology" when it identified a "need" for Project 9A and that the PUC unlawfully "disregarded the FERC-approved methodology" by applying an "incompatible" "Pennsylvania-also" methodology under 52 Pa. Code § 57.76(a)(1). Doc. 1 ¶¶ 69-70, 85. Transource's preemption claim fails because it is in direct conflict with plain language of the Federal Power Act and with FERC's interpretation of its own authority.

16 U.S.C. § 824(a) provides:

> It is declared that the business of transmitting and selling electric energy for ultimate distribution to the public is affected with a public interest, and that Federal regulation of matters relating to generation to the extent provided in this subchapter and subchapter III of this chapter and of that part of such business which consists of the transmission of electric energy in interstate commerce and the sale of such energy at wholesale in interstate commerce is necessary in the public interest, such Federal regulation, however, to extend only to those matters which are not subject to regulation by the States.

(emphasis added). Thus, by its terms, the Federal Power Act states expressly that the authority of FERC and PJM does not apply to matters that are subject to state regulation. In Pennsylvania, the determination of need under 52 Pa. Code §

25

57.76(a)(1) is a matter subject to state regulation.   Accordingly, the Federal Power Act does not preempt the Pennsylvania statute.  This ends the matter.  *See Chevron U.S.A. v. Nat. Res. Def. Council*, 467 U.S. 837, 843 (1984) ("First, always, is the question whether Congress has directly spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter[.]").

Moreover, Transource's preemption claim also conflicts with FERC's interpretation of its own authority.  "*Chevron* requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005).  FERC has stated expressly that "there is nothing" within its regulatory authority or that of PJM's "that preempts state authority regarding transmission planning, including authority over the siting, permitting, and construction of transmission facilities."  77 Fed. Reg. at 32,215.  The "Pennsylvania-also" methodology applied by the PUC pursuant to Pennsylvania law is the very same state authority that FERC has said is not preempted.  *See id*. at 32,244 ("tariffs and agreements subject to the Commission's jurisdiction . . . are not intended to limit, preempt, or otherwise affect state or local laws or regulations with respect to construction of transmission facilities, including but not limited to authority over siting or permitting of transmission facilities").   "[E]ven where more efficient or cost-effective

transmission solutions are identified and selected in the regional transmission plan" by an RTO like PJM, "such solutions may not ultimately be constructed should the developer not secure the necessary approvals from the relevant state regulators." *Id*. at 32,215 (emphasis added). That is precisely what happened here when the PUC denied Transource's siting applications. Contrary to Transource's theory, PJM's determination of "need" does not "relieve a developer" like Transource "from obtaining any necessary state regulatory approvals," including those required under 52 Pa. Code § 57.76(a)(1). *Id*. at 32,216 (emphasis added).

In sum, federal law did not preempt the PUC from applying the requirements of Pennsylvania state law when the PUC considered and denied Transource's siting applications. To the contrary, the PUC did precisely what federal law said it could do. That is the exact opposite of preemption. Transource's preemption claim fails and should be dismissed.

### C.    Transource's Commerce Claim Should Be Dismissed Because The PUC's Denial Of Transource's Siting Applications Did Not Discriminate Against Out-Of-State Utilities

Transource's Commerce Clause claim fails because the PUC's denial of Transource's siting applications did not discriminate against out-of-state utilities in favor of instate utilities. The Constitution grants Congress the power to "regulate Commerce . . . among the several States." U.S. Const. Art. I, § 8, cl. 3. Although the Clause is phrased as an affirmative grant of congressional power, it has long

been interpreted as containing a negative, or "dormant," aspect that "denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Or. Waste Sys., Inc. v. Dep't of Envt'l Quality*, 511 U.S. 93, 98 (1994). In the Third Circuit the "dormant Commerce Clause inquiry only considers whether the impact of [a state law] falls equally upon instate and out-of-state operators; if so, there is clearly no discrimination in favor of Pennsylvania operators" and no violation of the dormant commerce clause. *Heffner v. Murphy*, 745 F.3d 56, 72 (3d Cir. 2014).

Transource's Commerce Clause claim fails because there is no allegation that the PUC treated Transource differently from any instate utility. For example, Transource does not allege that the PUC granted the siting applications of a favored Pennsylvania utility while denying Transource's applications. To the contrary, the exhibits attached to the Complaint reflect that "Transource ha[d] filed all [siting] Applications and filings jointly with PPL Electric Utilities Corporation" – a <u>Pennsylvania utility</u>. Doc. 1-2 at 5 n.1. In addition, Transource was "a public utility in Pennsylvania" at the time its siting applications were considered and denied by the PUC. Doc. 1 ¶ 43. Thus, the PUC did not (and could not) discriminate against Transource as an out-of-state utility because Transource and its co-applicant were both instate Pennsylvania utilities and the PUC treated them exactly the same. In these circumstances there can be no violation of the dormant

Commerce Clause.  *See Heffner*, 745 F.3d at 73 (holding that a Pennsylvania law did not violate the dormant Commerce Clause because the challenged "restriction imposes the very same burdens on Pennsylvania [businesses] as it imposes on out-of-state interests").

Transource tries to sidestep this result by switching the point of comparison. According to Transource, the PUC has favored the interests of Pennsylvania electricity customers at the expense of out-of-state customers, none of whom are parties to this action.  *See* Doc. 1 ¶ 78.  But, as described above, Transource does not have standing to predicate its Commerce Clause claim on the interests of non-parties.  Transource also mischaracterizes the nature of the May 24 Decision denying its siting applications, claiming the decision is equivalent to a "State seek[ing] to close its border to imports, or prevent exports."  *Id*. at ¶ 79.  It is not. The PUC has not restricted the flow of imports or exports at all.  Instead, the PUC has denied approval for the construction of a massive energy transmission facility on Pennsylvania soil pursuant to the express terms of Pennsylvania's laws, which apply even handedly to both instate and out-of-state companies.  Neither the Commerce Clause nor any other federal law is implicated by that decision.  *See* Order No. 1000-A, 77 Fed. Reg at 32,216 (federal law "does not require that such facilities be built, give any entity permission to build a facility, or relieve a developer from obtaining any necessary state regulatory approvals").

Accordingly, Transource's Commerce Clause claim fails and should be dismissed.

## CONCLUSION

For the foregoing reasons, the PUC's motion to dismiss should be granted and the Complaint should be dismissed in its entirety.

Date:  July 23, 2021                              Respectfully submitted,


By:    *s/ Alexander T. Korn*
    **ALEXANDER T. KORN**           **ASPASSIA V. STAEVSKA**
    **Deputy Attorney General**       **Assistant Counsel**
    **Attorney ID 323957**           **Attorney ID 94739**
    **akorn@attorneygeneral.gov**     **astaevska@pa.gov**

    **MARY KATHERINE YARISH**    **JOSEPH P. CARDINALE**
    **Deputy Attorney General**       **Assistant Counsel**
    **Attorney ID 328843**           **Attorney ID 308140**
    **myarish@attorneygeneral.gov**   **jcardinale@pa.gov**

    **Office of Attorney General**      **KRISS E. BROWN**
    **15th Floor, Strawberry Square**  **Deputy Chief Counsel**
    **Harrisburg, PA 17120**         **Attorney ID 89036**
    **Phone: (717) 712-2037**        **kribrown@pa.gov**

                                          **Pennsylvania Public Utility**
                                          **Commission**
                                          **PO Box 3265**
                                          **Harrisburg, PA 17105-3265**
                                          **Phone: (717) 425-7403**


    **Counsel for Defendants**

31

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TRANSOURCE PENNSYLVANIA, LLC,** | **:** | |
| | **:** | |
| **Plaintiff** | **:** | |
| | **:** | **No.  1:21-CV-1101** |
| **v.** | **:** | |
| | **:** | **Judge Wilson** |
| **GLADYS BROWN DUTRIEUILLE,** | **:** | |
| **DAVID W. SWEET, JOHN F.** | **:** | **Electronically Filed Document** |
| **COLEMAN, RALPH V. YANORA** | **:** | |
| *and* **PENNSYLVANIA PUBLIC** | **:** | *Complaint Filed 06/22/21* |
| **UTILITY COMMISSION,** | **:** | |
| **Defendants** | **:** | |

## CERTIFICATE OF WORD COUNT

I, Alexander T. Korn, Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that the foregoing brief contains 6,970 words.

## CERTIFICATE OF SERVICE

I further certify that on July 23, 2021, I caused to be served a true and correct copy of the foregoing document titled Defendants' Brief in Support of Their Motion to Dismiss to the following:

## VIA ELECTRONIC FILING

**Allison N. Douglis, Esquire**
**Jenner & Block LLP**
**919 Third Avenue, 39th Floor**
**New York, NY  10022**
adouglis@jenner.com

**Erin R. Kawa, Esquire**
**James J. Jutz, Esquire**
**Lindsay Berkstresser, Esquire**
**Post & Schell, PC**
**17 North Second Street, 12th Floor**

*Counsel for Plaintiff*

**Harrisburg, PA  17101**
**ekawa@postschell.com**
**jkutz@postschell.com**
**lberkstresser@postschell.com**
*Counsel for Plaintiff*

**Matthew Price, Esquire**
**Jenner & Block LLP**
**1099 New York Avenue, NW**
**Suite 900**
**Washington, DC  20001-4412**
**mprice@jennercom**
*Counsel for Plaintiff*

　*s/ Alexander T. Korn*　　
**ALEXANDER T. KORN**
Deputy Attorney General