**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TRANSOURCE PENNSYLVANIA, LLC, | : | Civil No. 1:21-CV-01101 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| GLADYS BROWN DUTRIEUILLE, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

This is a declaratory judgment action filed by Plaintiff Transource

Pennsylvania, LLC ("Transource") against the Pennsylvania Public Utility

Commission ("PUC") and its Commissioners (collectively, "Defendants").  Before

the court is a motion to dismiss the complaint filed by Defendants.  (Doc. 57.)  For

the reasons that follow, the motion will be denied in part with respect to

Defendants' contention that Transource lacks standing.  Because the court finds

that abstention is appropriate in this case, the court will defer ruling on the

remainder of the motion.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

According to the complaint, Transource is a limited liability company

"formed to construct, own, operate, and maintain electric transmission facilities

and equipment within the Commonwealth of Pennsylvania."  (Doc. 1, ¶ 7.)  The

Commonwealth of Pennsylvania participates in an "inter-state regional electric grid

1

covering all or part of 13 states and the District of Columbia." (*Id.* ¶ 1.)  As part of this system, the Federal Energy Regulatory Commission ("FERC") has a planning process to ensure "efficient and reliable operation of the . . . system[,]" which may include planning for and construction of additional electric transmission lines. (*Id.*)  The complaint identifies PJM Interconnection, LLC ("PJM") as a "federally-regulated regional transmission organization" responsible for, inter alia, identifying "new electric transmission lines necessary for efficient and reliable operation of the regional electric system." (*Id.*)  Participating in FERC's planning process, PJM identified a need for two new transmission lines from southern Pennsylvania into Maryland to alleviate congestion within the existing electric transmission framework.  (*Id.* ¶ 2.)  In October 2014, PJM began soliciting proposals "to address, among other things, transmission congestion constraints in Pennsylvania, Maryland, Virginia, and West Virginia." (*Id.* ¶ 36.)

To meet this need and construct these additional transmission lines, Transource submitted a proposal, which was approved by PJM on August 2, 2016. (*Id.* ¶ 21.)  Transource then entered into a "Designated Entity Agreement" with PJM authorizing it to construct "two new electric transmission lines and associated facilities" in Pennsylvania, which was approved by FERC in January 2017.  (Doc. 1, ¶¶ 3, 41.)  In order to proceed with its projects, Transource applied to the PUC for a "Certificate of Public Convenience granting public utility status, which would

allow Transource . . . to enter upon land in order to make studies, surveys, tests, soundings and appraisals related to siting the transmission lines[,]" which was granted on January 23, 2018.  (*Id.* ¶¶ 3, 43, 63.)

Thereafter, Transource alleges that it sought PUC approval in order to site the transmission lines, which the PUC denied on May 24, 2021 after it determined that the "lines were not needed because eliminating the bottleneck would primarily help out-of-state customers," rather than Pennsylvania customers.  (*Id.* ¶ 4.)  As part of its decision, the PUC also "revoked Transource's provisional certificate granting it status as a Pennsylvania public utility."  (*Id.* ¶ 63.)  Transource then filed a direct appeal to the Pennsylvania Commonwealth Court on June 23, 2021, which remains pending.[1]  Pa. Commw. Ct. Docket No. 689 CD 2021.

Transource filed the instant complaint on June 22, 2021, seeking declaratory relief on the ground that the PUC's decision is preempted under federal law and violates the dormant commerce clause.  (*Id.* at 40.)[2]  In addition, Transource seeks injunctive relief preventing enforcement of the PUC's decision, including its revocation of Transource's Certificate of Public Convenience.  (*Id.* at 41.) Transource has requested resolution of this case on an expedited basis, noting that

---

[1] As of August 17, 2021, the parties indicated that the certified list had been filed and they were awaiting a briefing schedule from the Commonwealth Court.  (Doc. 76, p. 8.)

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

it must obtain all required state permits by September 30, 2021, under its Designated Entity Agreement with PJM. (*Id.* at 41.)  To date, Transource has filed a motion for summary judgment and a motion to expedite, Docs. 20, 21; PJM has filed a motion for leave to file an amicus brief, Doc. 40; and Defendants have filed a motion to dismiss, Doc. 57.  On July 12, 2021, the court issued an order setting an expedited briefing schedule for these motions and scheduling oral argument. (Doc. 30.)  All motions were all ripe for review as of August 13, 2021.  (Docs. 23, 24, 41, 58, 61, 63, 66, 68, 70, 72.)

On August 17, 2021, the court held oral argument limited to the issues raised by the motion to dismiss.  In addition to these issues, the court requested that counsel be prepared to discuss the applicability of the *Younger*[3] abstention doctrine, which the court raised sua sponte.  (Doc. 71.)  Following oral argument, the court allowed counsel to submit supplemental briefs addressing the *Wilton*/*Brillhart*[4] abstention doctrine.  (Doc. 75.)  These briefs were timely filed on August 24, 2021.  (Docs. 78, 80, 81.)

---

[3] *Younger v. Harris*, 401 U.S. 37 (1971).

[4] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 290 (1995); *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942).

## STANDARD OF REVIEW

Defendants seek dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.[5]  The court, in determining whether it has subject-matter jurisdiction, must decide "whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) (quoting *Licata v. U.S. Postal Serv.*, 33 F.3d 259, 260 (3d Cir. 1994)).  Rule 12(b)(1) challenges may be "facial" or "factual." *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  A facial attack challenges whether jurisdiction has been properly pled and requires the court to "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen*, 549 F.2d at 891).  Conversely, when a defendant sets forth a factual attack on subject-matter jurisdiction, "the Court is free to weigh the evidence and satisfy itself whether it has power to hear the case. . . . 'no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional

---

[5] Defendants also move to dismiss on Rule 12(b)(6) grounds.  However, for purposes of this decision, the court only addresses the jurisdictional challenge under Rule 12(b)(1).

claims.'" *Carpet Group Int'l v. Oriental Rug Importers Ass'n, Inc.*, 227 F.3d 62, 69 (3d Cir. 2000) (quoting *Mortensen*, 549 F.2d at 891).

In this case, Defendants challenge Transource's alleged failure to establish Article III standing, thus presenting a facial attack on subject-matter jurisdiction. As a result, the court will "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs., Inc.*, 220 F.3d at 176 (citing *Mortensen*, 549 F.2d at 891).

## DISCUSSION

Defendants first argue that Transource lacks standing to bring this lawsuit. Specifically, Defendants claim that Transource has not suffered an injury in fact because all economic injuries that Transource claims to have sustained "are predicated on future contingent events that have not happened yet and may not happen at all."[6]  (Doc. 58, p. 19.)  In addition, Defendants assert that Transource's purported injuries are not redressable because Transource could face the "same prospective economic harm [that] it does now even if the [c]ourt were to provide Transource with the relief it is seeking in this case." (*Id.* at 24.)  In other words,

---

[6] As a corollary to this argument, Defendants claim that even if Transource sustains economic injuries in the future, it may be able to recover most, if not all, of these costs.  (Doc. 72, p. 9.) Specifically, Defendants assert that Transource "received a commitment from FERC that it will recover '100 percent' of its 'prudently-incurred' expenditures on the [Projects] as well as a 9.9 percent return on its investment."  (*Id.*)  Therefore, Defendants argue that any economic loss alleged by Transource is speculative.  (*Id.*)

Transource could obtain a remand of its case to the PUC from this court, but would then have to establish that its siting applications should be granted under all four factors listed in 52 PA. CODE § 57.76, which it may not be able to do. (*Id.*) Finally, Defendants argue that Transource lacks standing to seek declaratory relief because such relief is unavailable to remedy an injury that was sustained in the past. (Doc. 72, pp. 10–11.)

Transource counters that it has been injured because the PUC has denied its siting permit applications and revoked its certificate of public convenience. (Doc. 68, p. 13.) These actions have prevented Transource from moving forward with its construction projects, and, without remedy, will put Transource "out of business." (*Id.*; Doc. 76, p. 24.) Likewise, Transource asserts that its injuries are redressable because "[i]f a reviewing court agrees that [an] agency misinterpreted the law, it will set aside the agency's action and remand the case—even though the agency . . . might later, in the exercise of its lawful discretion, reach the same result."[7] (*Id.* at 14–15 (quoting *FEC v. Akins*, 524 U.S. 11, 25 (1998)).)

The court addresses these arguments below.

---

[7] Transource does not dispute Defendants' contention that it may be able to recover its economic losses through FERC if and when they occur. However, Transource argues that the FERC process will be a "litigated proceeding" in which there is no guarantee that Transource would "recover every penny of" its investment costs associated with the projects. (Doc. 76, p. 27.)

**A. Transource has Standing to Bring this Lawsuit.**

Because Article III of the United States Constitution only allows federal courts to decide cases and controversies, a plaintiff must have standing to bring a claim in federal court. *Dep't of Comm. v. New York*, 588 U.S. __, 139 S. Ct. 2551, 2565 (2019). Article III standing requires that a plaintiff show "(1) a concrete and particularized injury, that (2) is fairly traceable to the challenged conduct, and (3) is likely to be redressed by a favorable decision." *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. __, 139 S. Ct. 1945, 1950 (2019) (citing *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013)).

For cases brought under the Declaratory Judgment Act, the Supreme Court has held that "[b]asically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). In addition, the Third Circuit has held that "[t]o satisfy the standing and 'case or controversy' requirements of Article III, a party seeking a declaratory judgment 'must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.'" *Blakeney v. Marsico*, 340 F. App'x 778, 780 (3d Cir. 2009) (quoting *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003)); *see also Wenzig v. SEIU Local 668*, 426 F. Supp. 3d 88,

100 (M.D. Pa. 2019) ("Declaratory judgment is not meant to adjudicate alleged past unlawful activity.").

In this case, the court finds that the PUC's denial of Transource's siting applications and the rescission of its certificate of public convenience are sufficient grounds to establish standing.[8]  It is evident that this case presents a substantial controversy between adverse parties.  Indeed, Transource has been litigating its ability to construct these transmission lines for almost four years.  (Doc. 76, p. 4.)  Transource's interest is clearly adverse to the PUC because the PUC denied its siting applications and is actively contesting Transource's appeal in the Commonwealth Court and the instant lawsuit.  This controversy is also immediate and real.  Transource has alleged that it is required, under its contract with PJM, to obtain all necessary state permits, including approval of the siting applications before the PUC, by September 30, 2021—a deadline which is quickly approaching.[9]

---

[8] Defendants admitted during oral argument that, to the extent Transource claims that the denial of its applications and revocation of its certificate of public convenience are sufficient to establish standing, it would not contest that the traceability prong of Article III standing is met. (Doc. 76, p. 24.)

[9] Transource has not denied that it may seek an extension of this deadline from PJM in order to obtain its required permits, and Defendants assert that an extension of this deadline has occurred in the past.  However, at this juncture, the court has not been advised that an extension has been requested and does not know whether such request, if made, will be granted.  In any event, it is also not clear, based on the record before the court at present, that a failure to meet this deadline would result in a cancellation of Transource's contract with PJM.  However, the court notes that this possibility has been alleged to exist.

Moreover, without obtaining the relief requested in this action, there is a substantial likelihood that Transource will suffer future harm.  If Transource is unable to obtain the required permits for construction in Pennsylvania to proceed at all, regardless of whether it is able to meet its contract deadline, its project would effectively end before it could begin.  Transource is an entity created for the sole purpose of constructing and overseeing the transmission facilities.  If this project is terminated, Transource's existence as an entity will follow suit.  Thus, not only has Transource been harmed by the PUC's decision to deny its applications, it also faces the future harm of ceasing to exist as an entity—i.e., being forced "out of business."  (Doc. 76, p. 24.)  Absent the relief sought in this action, Transource has no chance of returning to the PUC to pursue the application process and construct these transmission lines.[10]  Therefore, the court finds that Transource has standing to bring this lawsuit.[11]

_____

[10] While Transource essentially has two avenues by which it could return to the PUC, through relief granted either by this court or the Commonwealth Court, this reality does not impact the finding that Transource has standing to pursue its claims in this court.

[11] The court will not discuss the arguments raised regarding issue or claim preclusion at this juncture, as these issues do not serve as a jurisdictional bar that would prevent the court from hearing this case.  *See, e.g.*, *Holton v. Henon*, 832 F. App'x 781, 785 (3d Cir. 2020) (noting that "issue preclusion is not a jurisdictional bar"); *Pagano v. Ventures Trust*, No. 3:15-cv-1489, 2016 U.S. Dist. LEXIS 8341, at *18 n.5 (M.D. Pa. Jan. 22, 2016) (same), *report and recommendation adopted at* 2016 U.S. Dist. LEXIS 22584 (Feb. 24, 2016); *Briar Meadows Dev., Inc. v. South Ctr. Twp. Bd. of Supervisors*, No. , 2010 U.S. Dist. LEXIS 108995, at *18–19 (M.D. Pa. Oct. 13, 2010) (noting that claim preclusion "is not a jurisdictional bar, but rather is an affirmative defense").

## B. Abstention

Having determined that the court has jurisdiction to preside over this dispute, *see Kelly v. Maxum Specialty Ins. Group*, 868 F.3d 274, 281 n.4 (3d Cir. 2017) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)), the court next turns to the question of whether to exercise this jurisdiction over the claims presented in this litigation.

The Supreme Court has held that, as a general rule, "federal courts are obliged to decide cases within the scope of federal jurisdiction; abstention is not in order simply because a pending state-court proceeding involves the same subject matter." *Sprint Communs., Inc. v. Jacobs*, 571 U.S. 69, 72 (2013) (cleaned up) (citing *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 373 (1989) ("*NOPSI*") ("[T]here is no doctrine that . . . pendency of state judicial proceedings excludes the federal courts.")).  In other words, "the pendency of an action in state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

The *Younger* abstention doctrine was formed as an exception to this general rule, holding that federal courts must abstain from exercising their jurisdiction in cases with a parallel pending state criminal proceeding.  *Younger v. Harris*, 401 U.S. 37 (1971).  *Younger* has since been extended by the Supreme Court to cases

involving "state criminal prosecutions, civil enforcement proceedings, and civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Communs. Inc.*, 571 U.S. at 73 (cleaned up) (citing *NOPSI*, 491 U.S. at 367–68). However, the Supreme Court has emphasized that "[c]ircumstances fitting within the *Younger* doctrine . . . are 'exceptional[.]'" *Sprint Communs., Inc.*, 571 U.S. at 73.

In an apparent effort to restrict federal courts from abstaining in cases over which they could otherwise exercise jurisdiction, but recognizing that abstention may nevertheless be appropriate in certain circumstances, the Supreme Court has created several narrow categories of abstention in addition to the three categories outlined in *Sprint*.[12]  *Brillhart/Wilton* abstention is one such category arising in the context of the Declaratory Judgment Act, which confers discretionary jurisdiction on the federal courts.  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 290 (1995); *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942).  Under this category of the abstention doctrine, "[r]ather than being subject to the 'normal principle that federal courts should adjudicate claims within their jurisdiction,' district courts exercising [their] discretion [under the Declaratory Judgment Act] are governed by 'considerations of practicality and wise judicial administration.'"  *Reifer v.*

---

[12] For purposes of this case, the court discusses only the *Brillhart/Wilton* and *Colorado River* abstention doctrines.  *Wilton*, 515 U.S. at 290; *Colorado River*, 424 U.S. at 817; *Brillhart*, 316 U.S. at 495.

*Westport Ins. Corp.*, 751 F.3d 129, 139 (3d Cir. 2014) (quoting *Wilton*, 515 U.S. at 288).

In addition, *Brillhart* is implicated in cases "where 'another proceeding [i]s pending in a state court in which all the matters in controversy between the parties could be fully adjudicated.'"  *Id.* (quoting *Brillhart*, 316 U.S. at 495).  The *Brillhart* Court reasoned that:

> [o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.  Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

316 U.S. at 495.

In determining whether to exercise discretion to entertain litigation seeking declaratory relief where a pending parallel state court proceeding exists, *Brillhart* provided a non-exhaustive list of factors for courts to consider.[13]  *Brillhart*'s relevance was re-affirmed in *Wilton*, which emphasized the non-exhaustive nature

---

[13] The court should consider: "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." *Brillhart*, 316 U.S. at 495.  Answering this question may require inquiring

> into the scope of the pending state court proceeding . . . the nature of the defenses open there. . . . whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc.

*Id.*

of *Brillhart*'s factors.  *Wilton*, 515 U.S. at 282, 289–90.  The Third Circuit has

explained that:

> *Brillhart* and *Wilton* stand for at least two broad principles: (1) that
> federal courts have substantial discretion to decide whether to exercise
> [Declaratory Judgment Act] jurisdiction, and (2) that this discretion is
> bounded and reviewable.  Accordingly, this Circuit has acknowledged
> the [Declaratory Judgment Act]'s grant of discretion while cautioning
> that "what is granted is an opportunity to exercise a reasoned
> discretion."  *Bituminous Coal Operators' Ass'n v. Int'l Union, United
> Mine Workers of Am.*, 585 F.2d 586, 596 (3d Cir. 1978), *abrogated on
> other grounds by Carbon Fuel Co. v. United Mine Workers of Am.*, 444
> U.S. 212 (1979).  Thus, over the years we have enumerated factors for
> district courts to consider when exercising [Declaratory Judgment Act]
> discretion.  We have required district courts to consider four general
> factors:
>
>> (1) the likelihood that a federal court declaration will resolve the
>> uncertainty of obligation which gave rise to the controversy;
>
>> (2) the convenience of the parties;
>
>> (3) the public interest in settlement of the uncertainty of
>> obligation; and
>
>> (4) the availability and relative convenience of other remedies.
>
> *Pa. Dep't of Envtl. Res.*, 923 F.2d at 1075 (citing *Terra Nova Ins. Co.
> v. 900 Bar, Inc.*, 887 F.2d 1213, 1224 (3d Cir. 1989); *Bituminous Coal
> Operators' Ass'n*, 585 F.2d at 596).  We have also suggested that courts
> "seek to prevent the use of the declaratory action as a method of
> procedural fencing, or as a means to provide another forum in a race for
> res judicata."  *Terra Nova*, 887 F.2d at 1225 (quoting 6A J. Moore, J.
> Lucas & G. Girtheer, Jr., Moore's Federal Practice ¶ 57.08[5], at 57-50
> (2d ed. 1987)).

*Reifer*, 751 F.3d at 140.  In addition to the factors listed above, the Third Circuit in

*Reifer* held that courts should consider: "a general policy of restraint when the

same issues are pending in a state court;" "avoidance of duplicative litigation;" and "prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata[,]" emphasizing again that these factors are not exhaustive.[14]  *Id.* at 146.  Despite this seemingly broad grant of discretion, the Third Circuit has re-emphasized that "'the mere existence of a related state court proceeding' does not require a district court to decline to exercise jurisdiction" under the Declaratory Judgment Act.  *Pa. Dep't of Envtl. Res.*, 923 F.2d at 1075 (citing *Brillhart*, 316 U.S. at 495).

Similarly, *Colorado River* abstention "allows a federal court to abstain, either by staying or dismissing a pending federal action, when there is a parallel ongoing state court proceeding."  *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307 (3d Cir. 2009).  However, this theory of abstention is significantly narrower, and may be applied to claims brought outside the Declaratory Judgment Act.  *See id.* ("The doctrine is to be narrowly applied in light of the general principle that 'federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress.'" (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996))).

---

[14] The Third Circuit also noted that there may be additional factors relevant for consideration in the insurance context, which are inapplicable to this case and are therefore not mentioned here.

In determining whether *Colorado River* abstention is appropriate, courts apply a two-part inquiry: (1) "whether there is a parallel state proceeding that 'involve[s] the same parties and substantially identical claims, raising nearly identical allegations and issues[;]'" and (2) "[i]f the proceedings are parallel, courts then look to a multi-factor test to determine whether 'extraordinary circumstances' meriting abstention are present." *Nationwide Mut. Fire Ins. Co.*, 571 F.3d at 307–08 (quoting *Yang v. Tsui*, 416 F.3d 199, 204 n.5 (3d Cir. 2005); *Spring City Corp. v. American Bldgs. Co.*, 193 F.3d 165, 171 (3d Cir. 1999)).  This multifactor test calls for consideration of six factors: "(1) [in an in rem case,] which court first assumed jurisdiction over [the] property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties." *Id.* (quoting *Spring City*, 193 F.3d at 171).  "No one factor is determinative[.]" *Colorado River*, 424 U.S. at 818–19.  Rather, courts should utilize "carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise . . . ." *Id.*  "The balancing of factors is 'heavily weighted in favor of the exercise of jurisdiction.'" *Nationwide Mut. Fire Ins. Co.*, 571 F.3d at 308 (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)).

In cases such as this, where the complaint seeks both declaratory and injunctive relief, courts were previously split regarding whether the restrained *Colorado River* approach or the more liberal *Brillhart/Wilton* approach is appropriate. *See Sumner v. Tompkins Ins. Agencies, Inc.*, No. 16-2218, 2016 U.S. Dist. LEXIS 78379, at *17 (E.D. Pa. June 15, 2016) (noting that the Third Circuit has not clarified the issue and that other circuits are "sharply divided"). The Third Circuit has since resolved this split for our purposes and has determined that the independent claim test is applicable to a complaint containing claims for both legal and declaratory relief. *Rarick v. Federated Serv. Ins. Co.*, 852 F.3d 223, 229 (3d Cir. 2017). In order to apply this test, the Third Circuit has explained that:

> a district court must determine whether the legal claims are independent of the declaratory claims. If the legal claims are independent, the court has a "virtually unflagging obligation" to hear those claims, subject of course to *Colorado River*'s exceptional circumstances. *Colo. River*, 424 U.S. at 817–19. If the legal claims are dependent on the declaratory claims, however, the court retains discretion to decline jurisdiction of the entire action, consistent with our decision in *Reifer*, 751 F.3d at 144–46.

*Id.* The instant complaint requests both declaratory and injunctive relief. Therefore, the complaint contains mixed claims to which the independent claim test is applicable. *See Hartford Ins. Co. v. Stead*, 848 F. Supp. 2d 506, 511 n.1 (M.D. Pa. 2012) ("Coercive" claims refer to those "seeking compensatory damages or injunctive relief.") (quoting *Perelman v. Perelman*, 688 F. Supp. 2d 367, 372 (E.D. Pa. 2010)).

In the request for injunctive relief, Transource asks the court to enjoin the PUC from bringing an enforcement action against Transource in the event that it enters upon land in Pennsylvania to conduct environmental studies, surveys, and exercise other rights held by Pennsylvania public utilities.  (Doc. 76, pp. 29–34.) In essence, Transource requests that the court restore the status quo before the PUC issued its opinion and order denying Transource's siting applications and revoking its certificate of public convenience.  (*Id.*)  This claim for relief is inextricable from the declaratory relief in this case because the court could not reasonably award the injunctive relief sought without examining the merits of the declaratory judgment claim for relief.  In other words, without determining whether the PUC's actions violated constitutional law, the court could not order injunctive relief preventing enforcement of the PUC's order.

Thus, the court finds that the claims for declaratory and injunctive relief are not independent from one another, and will proceed to apply the factors identified in *Reifer* to determine whether it is appropriate to exercise discretion to decide all of the claims in this case.

> **1.     First Factor: The likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy**

With respect to the first factor for the court's consideration, the Third Circuit has recently explained that: "[t]he first *Reifer* factor is not intended to be a vehicle

for considering the effect of a declaratory judgment on the development of state law." *DiAnoia's Eatery, LLC v. Motorists Mut. Ins. Co.*, __ F.4th __, 2021 U.S. App. LEXIS 24644, at *26 (3d Cir. Aug. 18, 2021).  Rather, "the first *Reifer* factor captures whether a declaration would bring about a 'complete termination of the controversy' between the parties and thereby avoid duplicative, piecemeal litigation." *Id.* at *26–27.  The Third Circuit has stated that a declaration from a federal court will be unlikely to prevent further litigation "(1) when one or more persons have not been joined, but have an interest in the outcome of the action, and (2) when one or more issues have not been raised, but are a part of the controversy or uncertainty." *Id.* at *27.

In this case, a declaration from this court will not completely terminate the litigation between the parties.  This is because Transource has opted to raise legal issues with this court, but also raise legal and factual issues with the Commonwealth Court.  While a declaration from this court would resolve the legal issues presented for this court's review, the issues raised on direct appeal with the Commonwealth Court would remain pending.  Transource has not expressed an intent to abandon its appeal in the event that this court issues a favorable decision before the Commonwealth Court issues its decision.  Thus, the court finds that "one or more issues have not been raised, but are a part of the controversy" that

will need to be resolved in the state court proceeding before this litigation can

conclude. Therefore, the first factor weighs in favor of abstention.

## 2.    Second Factor: The convenience of the parties

The court finds that the second factor, the convenience of the parties, does

not weigh heavily in favor of exercising jurisdiction versus abstention in this case.

Transource appears to believe that it would be more convenient to litigate these

issues in this court based on its expressed preference to litigate its legal claims in a

federal forum and the perception that this court may provide a faster resolution

than the Commonwealth Court.[15]  (*See* Doc. 76, p. 10 (noting that Transource does

not wish to place its questions of federal law before the Commonwealth Court);

Doc. 80, p. 5 (noting that "the state court will not provide timely relief")); *see also*

Pa. Commw. Ct. Docket No. 689 CD 2021 (denying expedited review).  For their

part, Defendants argue that abstention would allow the parties to devote their full

attention to one case at a time.  In other words, it would be more convenient for the

parties to only have to brief, argue, and generally manage one case in one court in

---

[15] While the Commonwealth Court has denied Transource's request for expedited relief, this court has not yet ruled on Transource's motion to expedite.  (Doc. 21.)  Therefore, there has been no commitment from this court to resolve Transource's weighty constitutional claims by September 30, 2021, as requested by Transource.  But, even if this court were to make a final decision on the merits of Transource's claims in its favor before September 30, 2021, it is virtually impossible for Transource to meet its September 30, 2021 deadline to obtain all required state permits.  This is because Transource would be required to return to the PUC for the agency to reconsider Transource's siting applications and issue a new determination.  The court concludes that it is practically impossible to complete both steps by September 30, 2021.

a consolidated proceeding in which "all active parties in the proceedings before the PUC have an opportunity as of right to intervene and fully participate in the state proceeding," rather than balancing two cases in two separate courts simultaneously.[16]  (Doc. 78, p. 3.)

In addition to these arguments, the court notes that both the Commonwealth Court and this court are located in Harrisburg, Pennsylvania.  Therefore, there is not a more convenient forum for either party based on the location of the tribunal. On balance, considering the parties' competing arguments, the court finds that this factor is neutral with respect to the court's abstention analysis.

### 3.     Third Factor: The public interest in settlement of the uncertainty of obligation

With respect to the third *Reifer* factor, the Third Circuit has stated that "[w]here state law is uncertain or undetermined, the proper relationship between federal and state courts requires district courts to 'step back' and be 'particularly reluctant' to exercise [Declaratory Judgment Act] jurisdiction."  *Reifer*, 751 F.3d at 148 (quoting *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 135–36 (3d Cir. 2000) ("[T]he state's interest in resolving its own law must not be given short shrift simply because one party or, indeed, both parties, perceive some advantage in the

---

[16] Defendants also note that "[t]here is no equal right to intervene in this [c]ourt's proceeding; in fact, this [c]ourt has denied intervention to at least one party."  (Doc. 78, p. 3.)  The court notes that there is a pending appeal regarding this court's order denying intervention to Franklin County and Stop Transource Franklin County.  (Doc. 77.)

federal forum.")).  Thus, the Third Circuit has expressed a preference for district courts to "squarely address the alleged novelty" of the state law claims at issue, if any.  *Id.* at 149.

In this case, the court perceives novel questions of state law regarding the following issues: (1) whether the PUC may question or reevaluate PJM's regional planning "need" determination when making a "need" determination under 52 PA. CODE § 57.76(a)(1);[17] and (2) whether the PUC's "need" determination under 52 PA. CODE § 57.76 may conflict with PJM's determination of "need" at the regional planning level.[18]  The court recognizes that there is some degree of interplay

---

[17] 52 PA. CODE § 57.76 provides, in pertinent part, that:

> The Commission will not grant the application, either as proposed or as modified, unless it finds and determines as to the proposed [high voltage] line:
>
> (1) That there is a need for it.
>
> (2) That it will not create an unreasonable risk of danger to the health and safety of the public.
>
> (3) That it is in compliance with applicable statutes and regulations providing for the protection of the natural resources of this Commonwealth.
>
> (4) That it will have minimum adverse environmental impact, considering the electric power needs of the public, the state of available technology and the available alternatives.

52 PA. CODE § 57.76(a)(1)–(4).

[18] The court notes that in its notice of appeal to the Commonwealth Court, Transource presents substantially the same questions in its short statement of the relief sought: (1) whether "[t]he PUC erred as a matter of law when it applied the incorrect legal standard under 66 Pa. C.S. § 1501 for determining whether the Project is needed;" and (2) whether "[t]he PUC erred as a matter of law when it rejected the results of PJM's FERC-approved process for evaluating

between state and federal law with respect to these questions.  Indeed, Transource would have this court phrase these questions differently: i.e., (1) whether the PUC's reevaluation of PJM's determination of "need" at the regional planning level when making a "need" determination under Pennsylvania law is preempted by the Supremacy Clause and otherwise violates federal law; and (2) whether the PUC's "need" determination under 52 PA. CODE § 57.76 impermissibly conflicts with PJM's predetermined "need" finding under the regional planning process in violation of federal law.

Regardless of how these questions are phrased, both federal and state law are implicated.  What is most important for purposes of the immediate issue under discussion is that, on balance, Pennsylvania has the greater interest in resolving this question under state law before this court is asked to apply federal constitutional law.  Specifically, the court observes that if the Commonwealth Court determines, as a matter of state law, that the PUC is not permitted to question or reevaluate PJM's regional planning "need" determination when making a "need" determination under section 57.76 of the Pennsylvania Code, the Supremacy and Dormant Commerce Clause issues will be rendered moot.

---

market efficiency projects as insufficient evidence of need under Pennsylvania law[.]"  (Doc. 78-1, p. 15.)

In addition, Transource has filed a direct appeal from the PUC to the Commonwealth Court.  Pennsylvania has a strong interest in maintaining the uninterrupted progression of its administrative appeals process to resolve potential constitutional violations, among other issues.  Similarly, Pennsylvania has a strong interest in siting concerns for high voltage transmission facilities.  This interest is represented and codified in federal regulations, which explicitly reserve siting considerations to the states.  *See* FERC Order 1000, 18 CFR Part 35, ¶ 107 (July 21, 2011) ("We acknowledge that there is longstanding state authority over certain matters that are relevant to transmission planning and expansion, such as matters relevant to siting, permitting, and construction.  However, nothing in this Final Rule involves an exercise of siting, permitting, and construction authority.").  Indeed, Transource has not contested the fact that siting authority is within the exclusive jurisdiction of the states.  (Doc. 76, pp. 65–66.)

Finally, the court notes that the "Supreme Court has frequently counselled that federal courts should presume 'that the [state] statute will be construed in such a way as to avoid the constitutional question presented,' *Baggett v. Bullitt*, 377 U.S. 360, 375 (1964); *see Siler v. Louisville & Nashville R. R. Co.*, 213 U.S. 175, 193 (1909), and that 'state courts may be reluctant to attribute to their legislature an intention to pass a statute raising constitutional problems, unless such legislative intent is particularly clear[.]'" *Finberg v. Sullivan*, 634 F.2d 50, 69–70 (3d Cir.

1980) (citing *Boehning v. Indiana State Employees Assn., Inc.*, 423 U.S. 6, 7 n.*
(1975) (per curiam)).  Thus, the court finds that Pennsylvania has a strong and
significant interest in being the first to resolve any potential constitutional
violations before this court intervenes.

To be clear, the court is not foreclosing Transource's ability to present its
federal constitutional questions before this court indefinitely.  Rather, the court
finds that Pennsylvania Courts should be given the first opportunity to consider the
scope of its own law (52 PA. CODE § 57.76) in light of the interplay with federal
law before this court determines whether the PUC's application of this particular
state law violates the federal constitution.

In light of these considerations, the court finds that the third *Reifer* factor
weighs in favor of abstention.

### 4.    Fourth Factor: The availability and relative convenience of other remedies

The court finds that the fourth factor, the availability and relative
convenience of other remedies, weighs slightly in favor of abstention in this case.
As explained above, Transource appears to believe that it would be more
convenient to litigate these issues in this court based on its expressed preference to
litigate its legal claims in a federal forum and the perception that this court may

provide a faster resolution than the Commonwealth Court.[19]  (*See* Doc. 76, p. 10

(noting that Transource does not wish to place its questions of federal law before

the Commonwealth Court)); *see also* Pa. Commw. Ct. Docket No. 689 CD 2021

(denying expedited review).  However, Transource has conceded that the

Commonwealth Court has jurisdiction to hear its federal claims and Transource is

not precluded from litigating its federal claims in state court.  (Doc. 76, pp. 10–11.)

Thus, Transource has another avenue available for pursuing its constitutional

issues.  As acknowledged by Transource, the Commonwealth Court is perfectly

capable of applying the Supremacy and Dormant Commerce Clauses to this case.

(*See id.*)

The court also finds that the Commonwealth Court may be a more

convenient forum for the parties since, as explained above, they could consolidate

their litigation efforts before one court, rather than litigating two separate sets of

claims before two separate courts.  Moreover, the Commonwealth Court is

"statutorily empowered" to review actions by Pennsylvania agencies and, as such,

is a specialty court uniquely suited to resolve appeals from PUC decisions.  (Doc.

78, p. 4.)  Therefore, based on these considerations, the court finds that this factor

weighs slightly in favor of abstention.

---

[19] *See* footnote 15, *supra.*

### 5.    Fifth Factor: The general policy of restraint when the same issues are pending in a state court

The Third Circuit has clarified that the fifth *Reifer* factor's "'policy of restraint' is applicable only when the 'same issues' are pending in state court between the same parties, not when the 'same issues' are merely the same legal questions pending in any state proceeding."  *DiAnoia's Eatery, LLC*, 2021 U.S. App. LEXIS 24644, at *29–30 (citing *Kelly*, 868 F.3d at 289 (holding fifth factor inapplicable where "issue of [insurer's] obligations under its insurance policy with [insured] is not pending in a state court" and "[insurer] is not even a party in the pending state court action and the insurance coverage dispute cannot be fully resolved without [insurer]"); *Brillhart*, 316 U.S. at 495 ("Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.")).

In this case, Transource has indicated that it intends to "protectively brief" the same issues raised in this court in its direct appeal to the Commonwealth Court once a briefing schedule is set and it has the opportunity to file a brief.  (Doc. 76, p. 10.)  Specifically, Plaintiff's counsel indicated at oral argument that:

> I want to be candid with the court, we haven't filed our brief in that case yet.  I want to be candid with the court that we may sort of protectively brief those issues in the state court given the arguments that the commission has made about preclusion and this court's inability to

decide the merits of them.  We don't want to be unable to present them to any court.  That wouldn't be an appropriate outcome.

But right now they are not before the Pennsylvania court.  We don't want to place them before the Pennsylvania court.  We've reserved them for this court's adjudication pursuant to the *England* doctrine[.]

(*Id.*)[20]

The court finds the question of whether the "same issues" are pending in both proceedings to be somewhat opaque.  Transource has indicated its intent to "protectively brief" the issues presented to this court before the Commonwealth Court, but also notes that "right now[,] they are not before the Pennsylvania court." (*Id.*)  In its notice of appeal to the Commonwealth Court, Transource indicated that it seeks a determination from the Commonwealth Court that "[t]he PUC erred as a matter of law when it applied the incorrect legal standard under 66 Pa. C.S. § 1501 for determining whether the Project is needed;" and "whether "[t]he PUC erred as a matter of law when it rejected the results of PJM's FERC-approved process for evaluating market efficiency projects as insufficient evidence of need under

---

[20] *England v. Louisiana State Bd. of Medical Examiners*, 375 U.S. 411 (1964).  At a basic level, the *England* doctrine is applicable "when a federal court abstains from deciding a federal constitutional issue to enable the state courts to address an antecedent state-law issue[.]"  *San Remo Hotel, L.P. v. City & County of San Francisco*, 545 U.S. 323, 339 (2005).  "[T]he plaintiff may [then] reserve his right to return to federal court for the disposition of his federal claims." *Id.*  At the time when Transource filed its direct appeal with the Commonwealth Court, the action before this court had only been pending for a single day.  Thus, this court has yet to issue a determination regarding whether it would abstain from hearing Transource's claims.  The court accordingly questions whether Transource prematurely raised the *England* doctrine in the Commonwealth Court proceeding before this court decided whether to abstain.

Pennsylvania law[.]"  (Doc. 78 1, p. 15.)  As noted above, the court acknowledges that the phrasing of the questions before the Commonwealth Court and those presented to this court is distinct.  But the court finds that it is a distinction without a difference for purposes of this discussion.  The same federal and state law concerns are implicated regardless of how the issues are phrased.  That fact, in combination with Transource's representation that it may "protectively brief" the federal issues in the Commonwealth Court appeal, creates a distinct possibility that both courts may essentially be asked to resolve the same issues (although the Commonwealth Court is also being asked to resolve additional issues).

Based on this conclusion, the court finds that the general policy of restraint when the same issues are pending in the state court weighs slightly in favor of abstention in this case.  The court recognizes that the application of this factor is somewhat unclear in light of Transource's mixed representations to the court about whether it intends to argue the federal issues in the Commonwealth Court appeal.  Nevertheless, based on the status of both cases at this time, the court finds that the same issues have at least been *presented* before both courts, and the general policy of restraint tips slightly in favor of abstention.

### 6.    Sixth Factor: Avoidance of duplicative litigation

For many of the same reasons as the fifth factor, the sixth *Reifer* factor weighs in favor of abstention in this case.  As explained above, Transource has

effectively presented the same issues to the Commonwealth Court in its direct

appeal that it has presented to this court.  (*See* Doc. 76, pp. 7, 10.)  Especially in

light of Transource's potential protective briefing, there is a real concern that two

courts will be asked to decide the same issues of federal constitutional law.

Requesting that two courts perform the work that one could easily accomplish on

its own is "the very definition of vexatious, inefficient, and duplicative litigation."

*Nationwide Agribusiness Ins. Co. v. Sheriff*, No. 1:14-cv-2082, 2015 U.S. Dist.

LEXIS 8968, at *13 (M.D. Pa. Jan. 27, 2015).  Therefore, the court finds that this

factor weighs in favor of abstention.

> **7.      Seventh Factor: Prevention of the use of the declaratory action
> as a method of procedural fencing or as a means to provide
> another forum in a race for res judicata**

Likewise, the court finds that the seventh factor weighs especially strongly

in favor of abstention in this case.  The court has concerns that it has been set up in

a "race" with the Commonwealth Court to determine which forum is able or

willing to provide faster relief to Transource.  Indeed, at oral argument, Transource

indicated that "given where [the Commonwealth Court] case is . . . and given this -

- where this case is, . . . we're hopeful that that eventuality wouldn't occur where

the state court would reach judgment first."  (Doc. 76, pp. 11–12.)  Transource also

expressed its appreciation for this court ordering "a quick schedule for briefing."

(*Id.* at 11.)  Since this litigation was initiated with this court, Transource has been

interested in obtaining relief as quickly as possible.  While this court has not yet ruled on Transource's motion to expedite this case, it has set an expedited briefing schedule and made an effort to resolve the threshold jurisdictional issues as quickly as possible.  The court also infers that Transource is displeased with the Commonwealth Court's denial of its request for expedited relief on July 14, 2021. *See* Pa. Commw. Ct. Docket No. 689 CD 2021.  While the court can understand Transource's desire for an expedited resolution of the significant issues that have been presented to both courts, this court is neither compelled nor inclined to race another court toward resolution of identical issues.[21]

Therefore, the seventh *Reifer* factor weighs heavily in favor of abstention.

---

[21] Moreover, Transource acknowledged that although it *can* argue its constitutional questions before the Commonwealth Court and the Commonwealth Court would have jurisdiction to hear them, it would nonetheless prefer to have those issues resolved by a federal district court.  (Doc. 76, pp. 10–11.)  Indeed, Transource has explicitly stated that it does not want to place its constitutional issues before the Commonwealth Court.  (*Id.* at 10.)  Yet, Transource has given no explanation of why it does not wish to present its federal constitutional claims to the Commonwealth Court, nor has Transource provided a convincing explanation of why this court has a superior interest or ability to resolve these particular constitutional questions, which implicate the scope of Pennsylvania law governing siting applications for high voltage transmission lines and the PUC's application of this law.  The Supreme Court has noted that the state courts are quite capable of adjudicating constitutional challenges to state agency decisions. *See, e.g.*, *San Remo Hotel*, 545 U.S. at 347 (observing that "[s]tate courts are fully competent to adjudicate constitutional challenges to local land-use decisions").  Thus, the court views Transource's persistence in attempting to reserve its federal constitutional law claims for federal court as additional evidence of Transource's perception that this court will provide faster relief than the Commonwealth Court.  For the reasons listed in footnote 15, *supra*, the court rejects this notion and construes it here in favor of abstention to avoid racing this court with the Commonwealth Court.

### 8.     Balancing

Taking all the *Reifer* factors together, the court notes that none weigh against abstention in this case.  Instead, the first, third, fourth, fifth, sixth, and seventh factors weigh in favor of the court's discretionary decision to abstain pending resolution of the Commonwealth Court case, and the second factor is neutral. Therefore, the court will, in the exercise of its discretion, abstain from further action in this case until there is a final decision on the merits of Transource's appeal from the PUC's adverse decision.

## CONCLUSION

For the foregoing reasons, the motion to dismiss filed by Defendants, Doc. 57, will be **DENIED** in part with respect to Defendants' arguments that Transource lacks standing.  Having determined that the court has jurisdiction over this lawsuit, in the exercise of its discretion, the court will abstain from exercising its jurisdiction until final resolution of the parallel Pennsylvania Commonwealth Court proceeding at docket number 689 CD 2021.  An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: August 26, 2021

32